Are you forgetting something? You know what, you're both ready to proceed? At the outset I do again apologize, we are behind schedule. We've had some very lengthy arguments earlier this morning. So, counsel, whenever you're ready. Thank you. Good morning and I am pleased to report John Rudasovich on behalf of the appellant, James Weiss. Say that again. John Rudasovich on behalf of ... Rudasovich. Rudasovich. Okay, thank you. Sure. Thank you. The issue in this case is whether James Weiss, who has been incarcerated since he was 13 years old, established probable cause to warrant an evidentiary hearing on whether he remains a sexually violent person. Now, probable cause as used in the Sexually Violent Persons Act has been defined as a very low burden that one needs to come forward with evidence to secure an evidentiary hearing. That was the third district in Wilcoxon. And it's only intended to establish basic facts as to probability. So when a court hears evidence that's either produced or submitted to the court at a probable cause hearing, it's not to weigh the evidence. It's simply to consider it and determine whether or not, based on what has been submitted, there's a ... I think the standard is a plausible account that the person either no longer has a mental disorder or that even if they still have a mental disorder, that it's not substantially probable that they are going to engage in acts of sexual violence in the future. So in other words, the mental disorder doesn't create an unacceptable public safety risk. Now because it is a plausible account of something that could happen in the future, the probable cause hearing under Section 65B1 happens after a report is generated by the Department of Human Services. They go and interview the respondent at DHS, prepare a report, submit it to the court. So you had a report in 2015, Mr. Rudasevich, and then another one shortly thereafter? Well, there were two reports. There was one on October 15th of 2015, and while motions were pending on that probable cause determination, the court's required to make that determination as soon as practical after they receive that report, that October 12th, 2016 report came down. So another report came down? Another report came down. Now the way ... the order actually does matter because when the 2015 report came down, there was ... the respondent's attorney moved for time and withdrew. The state immediately filed a motion for a finding of no probable cause, which is not independently legally significant. It's simply, I believe, a matter of kind of flagging for the trial court that this ... you've received a new evaluation, a new report. It's time to do a probable cause hearing. Then the public defender was appointed. There were two continuances after that. The public defender filed a response, state moved to strike the response. The court ultimately ruled on that. They denied the state's motion to strike the response, and then the matter proceeded to the probable cause hearing. The probable cause hearing consisted simply of the arguments of the attorney general who was present in the courtroom and the public defender on behalf of Mr. Bryce, and the court considered obviously the only evidence in front of it at the time was the 2015 report. Now, it wasn't a formal hearing. There wasn't ... the state didn't introduce the report. It wasn't received into evidence or no evidentiary rules. Of course, it's considered ... It's assumed that the court had the report. It had been filed in the court file. It's documented. There's a Lake County Circuit Clerk stamp on the report itself. While the court took the matter under advisement, it was going to rule. That got continued a couple of times. In the interim, this new report came down, the new DHS report came down. The new DHS report corroborated, as I set forth in the brief, many arguments that the public defender had made, and actually raised some new questions about the reliability of the 2015 report. Then that new report, it was not much different than the 2015 report that the court had relied on. Was it? It was very different. It was no different in the sense that both evaluators, both DHS evaluators ultimately determined that Mr. Bice remained sexually violent. That was their ultimate opinion. But how they arrived at that opinion was very different. In the 2015 report, the evaluator was a Dr. Proctor, utilized ... First of all, he diagnosed Mr. Bice with pedophilia under the DSM-5, and then utilized various actuarial risk assessment tools, the Static 99R, the Static 2002R, to get a level of risk. He also noted in his report, he being Dr. Proctor in the 2015 report, that Bice was not very motivated to engage in treatment, and he was kind of on and off again in treatment. Didn't have very concrete plans about the future, and I think he said the biggest thing that he accomplished in 2015 was that he fired his attorney and was going to get a new one. So it wasn't a very complimentary report, the 2015 report. So would the result have been different had the court reviewed it and allowed a new hearing than it was the first time? The question is, would the result have been different if the court had considered the 2016 report? Oh, absolutely. Absolutely. Because the 2016 evaluator is a DHS evaluator, is on the list of a professional ... She's a professional ... Not professional responsibility. A professional evaluator for the state of Illinois, said that it's improper to diagnose Bice with pedophilia. He doesn't meet one of the DSM criteria. So that is the mental disorder upon which he was committed. He was committed also on that mental disorder on a stipulation, which is not independently significant, but the Rendon courts flagged that issue in the Rendon decision, seemed to think that it was somehow significant that there was not a jury or judge that had vetted this issue in the past, that had reviewed whether or not that mental disorder, that diagnosis and the predictions about future criminality were accurate. It was done on an admission. So the 2016 evaluator says he should not have been diagnosed with pedophilia, and also said that the new research has come out on juvenile sex offenders, so offenders who committed only sex offenses as juveniles, that suggests that the recidivism rates, which is an important determination, predictor for future criminality, are far lower, far lower than they are for other adult offenders. And therefore, it's not even ethical for an evaluator to use the risk assessment tools such as the STATIC-99-R, the STATIC-2002-R. Now, on the STATIC-99-R, Dr. Proctor, in the 2015 report, had estimated Mr. Weiss to be either a moderate or moderate to high risk, and on the STATIC-2002, it was a moderate risk. So the level of risk was not the high risk category, it was not the high risk, high needs category to begin with, if those actuarials should have been used. But what Dr. Locke-Davis in the 2016 report said is that the general, it's very difficult to predict recidivism for juvenile sex offenders to begin with, that there aren't good tools in place, and that at best, the estimated recidivism rates are about 5%, which is far lower than I believe it was 14, much higher percentages that Dr. Proctor had placed on Mr. Weiss's chance of recidivism. So 5% generally across the board. She did ultimately diagnose, to answer your question, I'm very wrong about the way, Justice, she ultimately did diagnose Weiss with, I believe it was, I have it, it's unspecified paraphilic disorder. And the way Dr. Locke-Davis came to that unspecified paraphilic disorder was she said, well, he had committed some sexually, some offenses that were sexual in nature in the past, he's been incarcerated, it's obviously caused problems for him, he's not been able to make it out since he's 13, he's now 34 years old, so there must be some sort of mental disorder at play here. It is a circular argument. It raises its own set of issues, the 2016 diagnosis, the mental disorder diagnosis. But certainly the difference between the 2016 report and the 2015 report, at least on the issue of mental disorder, gives rise to probable cause. That's a plausible account that Mr. Weiss doesn't have a mental disorder that would render him dangerous. And then when we consider the arguments that the public defender made about the recidivism rates, he made very similar arguments about the utilization of the actuarial risk assessment tools. And that was backed up by the 2016 evaluator. She agreed and cited brand new research in 2014 and in 2016 that backs up exactly what the public defender was saying. And so both of those together, certainly we could say, just based on what the public defender said about the 2015 report, he could have made out a case for probable cause. And we argue that he did make out a case for probable cause. When buttressed by the 2016 report, that argument becomes that much stronger. His arguments were corroborated by an evaluator. It's one thing to have an attorney say, professionals, you should be doing something. It's another thing to have another peer in the profession say, this is inappropriate or this is appropriate. This is the level of current research. And... So what are you asking us to do, Mr. Rodasich? What I'm asking you to do is to, I'm asking the court to consider the 2016 evaluation, as part of the record, and to remand this case for an evidentiary hearing on the issue of whether or not it remains sexually violent. Procedurally, has that, and I realize this is an aside, or call it a footnote, or call it whatever you want, but that 2016 evaluation, was that considered in a subsequent hearing? It is my understanding that the court, once again, has heard argument, and that matter is scheduled for ruling sometime next week. So the court has not yet ruled on the 2016 report. In the interim... There's a 2017 report. There's a 2017 report that the court has not heard argument on and is not considering. And part of the issue is that the court, when the state argued that, listen, we filed this 2015 report, the statute mandates that you consider only one report at a time, and the court, essentially, the trial court bought that. Well, that begs the question. I mean, the statute was set up, and it didn't mandate that the hearings be conducted within a year. It is nearly as practicable or in language to that effect. But doesn't this whole thing just beg the question? There's always going to be a newer report, it seems. We have now four years in a row where, by the time we get to the probable cause hearing, there's a new report. There's always a new report. So isn't the respondent here always behind the eight ball? By the time he gets a hearing, there's yet new evidence. There's new evidence. That's true. I suppose that, I mean, ideally, when under Section 65b1, when it says the hearing should be held as soon as practical... As soon as practical. Here we go. Ideally, that would be done within a year period, so that there wouldn't be more evidence to receive, because I think that the counterfactual scenario, I mean, in this case, the 2015 report wasn't stellar. The 2016 report was much better, and the two of them together make out a case for probable cause. You can usually flip those two. Imagine that the 2015 report was pretty good, and in the interim, a new report comes down, and it doesn't sound so good anymore. That's still relevant information for the court to consider. The court can't say, well, a year ago, there was probable cause, but now, considering this newer report, I'm not so convinced there's probable cause anymore, and deny the hearing. That's probably the appropriate thing to do, because the hearing, what is the probable cause determination, but a determination that at some future proceeding, you will be able to make out a plausible account that the person's no longer sexually violent. And so, the reason why it was mandated for the court in this case to consider the 2016 report, is we can stick to a very overly formalistic approach, and just look at statute, or you can consider that if the public defender, having received this 2016 report. Prior to the court ruling on the 2015 report. Prior to the court ruling on the 2015 report, informs the court, this has been filed in the court file, judge, we want you to consider this too. This backs up my arguments, because at the hearing, which is going to happen sometime after you rule, I can call Dr. Locke Davis as a witness to impeach Dr. Proctor on his methodology. And the state bears the burden of proof at that hearing, and there are two witnesses here now that I have. The state may want to call Dr. Proctor, and if they do, I'm certainly going to call Dr. Locke Davis. And that's certainly a plausible account that the person could prevail at that hearing. Could prevail at an entry hearing. Do you believe, or is it clear whether the court is waiting for our ruling to rule on the 2016 report, or not? Justice, I don't know the answer to that question. I don't know what the delay has been for. I just know it's been delayed again. And in speaking with counsel, I know that argument was not received on the 2017 report. So the only argument that was received was on the 2016 report. All right, but this comes to us in two issues on appeal. But the first issue is, was there an abuse of discretion in denying a motion to reopen proofs? And I believe the standard of review is abuse of discretion. Do you want to elaborate on that? Sure. I had argued actually that, and it's our position that the standard of review should be de novo for the simple reason that there, at least in this case, the court didn't exercise any discretion. The court believed based on the state's argument that the court lacked discretion under the statute. If I may finish this thought. Both states argued that the court lacked discretion to consider any subsequent report under the statute. And so the court's ruling is essentially a matter of law, based specifically on section 65B1. And so I believe it should be de novo. Even if it's not de novo, though, it's not as though the court said, in this case, in my discretion, considering the nature of the report and the amount of time that it would require me to read the report or something, there was no discretion exercise. It was the only... It's just that I'm hamstrung. I can't go through this report until I rule on 2015. I can't do this. Hamstrung by the statute. Right. But do you, when you consider and look at the statute, do you believe that the statute anticipated, at least, that report and hearing would take place within a 12-month period? Likely. Do you believe that was anticipated? Likely. However, the statute also does contemplate that a respondent can ask the court to pay for an independent evaluator. That independent evaluator would then need to meet with the respondent, prepare a report of their own, and that could take some time. And so I don't know. I think that's probably why there weren't time frames put into the statute. But certainly the probable cause hearing talks about reports in the plural, not in the singular. And that's the DHS evaluator's report and any subsequently prepared report by an independent evaluator. Are you arguing the inference is it did apply to multiple department reports? Absolutely. Absolutely. It's the same sort of evidence. It's a sociopsychiatric report concerning the respondent. It's the same sort of thing. I suppose the defense attorney in this case could have asked the court to pay for Dr. Love Davis to prepare a report, and it could have been the exact same report that was prepared at the defense request or at the respondent's request. So if there are no other questions. But if they had done that after the proofs were closed, we're back in the same box, right? Again, I don't know that proofs were closed. The report was received by the court and file stamped back in October of 2015. Well, I guess the court said, okay, you've told me what you want to tell me. I'm going to put it up, give you a date for ruling. So if I'm going to give you a date for ruling, I'm presuming the evidentiary portion of the hearing is completed, even though it was in effect here, only argument. So wouldn't you still be back in the same position? You would be back in the same position. Even if I'm now asking for an independent evaluator, I still would have to convince the court to open the proofs. That's true. That's true. So I'd have to ask the court to reopen the proofs. But until the court rules, it's not a final and appealable order. Oh, agreed. Issues are still there. But aren't we still back in that obstacle of the proofs have closed? Right. It's no different than a bench trial, evidence coming in in a bench trial, right? Well, bench trial, we're done. Both sides have rested. We're done. But the court hasn't ruled yet. The court hasn't ruled. Neither side rested in this case. I don't think either side contemplated that more evidence would come before the court. But there was no – the trial court did not say state, you may proceed. Judge, we'd like you to consider the 2015 report prepared by Dr. McLaughlin. It was just on the reports. It was just arguments on the reports that were in the court file. Okay. Thank you. Thank you. May it please the Court. Counsel. I'm Assistant Attorney General Daniel Lewin for the people. So there are two questions in this case. First, did the circuit court consider the right evidence? And second, did it make the right decision? And the answer to both questions is yes. The circuit court did not abuse its discretion when it made its ruling based only on what was presented in the hearing that the court was ruling on. And because the only evidence that was before the court concluded that the respondent was still a sexually violent person, the circuit court's finding of no probable cause was correct. And we therefore ask this court to affirm. Should the court have or would it have been error for the court to have considered the 2016 report that came right at its heels? We don't think this court has to go so far as to say it would be error for the court to consider 2016. The question presented before this court is whether the circuit court was required to consider the 2016 report and the 2015 report. So in our brief, we don't advocate as far as to say it would be error if he had considered the 2016 report, and we don't ask the court to go this far. The question is whether the statute mandates the court to consider the 2016 report and the 2015 proceedings. If that's your position, then the trial court said, I can't, under no circumstances, I never, ever, ever can consider the 2016 report. Aren't we inherently saying either you do have the discretion or you don't? Should we remand it for the court to make a decision after we tell them that they have the discretion to consider the new report? You should not. The reason for that is the circuit court didn't just say, I'm hamstrung by the statute. All I'm allowed to consider is the 2015 report. The circuit court explained if you look at page 449 and 450 of the record, the circuit court's making its ruling on the motion to reopen proofs, talks about how these hearings aren't conducted in a timely way, and that ties in. Yes, he did. He made some pretty disturbing remarks that this is basically the bottom of the totem pole. We get one half a day per week to do all these hearings, and they're never done timely. And we can see a number of reasons for that. Part of that is circuit courts being overburdened under staff. Part of that is almost all of the delay in these cases is attributable to the respondents, and not as a matter of fault, but simply that the state files the report and is ready to go in the hearing, and respondents need time to look things over, which is why in this case the reason it took over a year is the respondent asked for six continuances. But the circuit court didn't just say, I'm hamstrung. The circuit court's. Would you be in the same position if the 15 report has said, this guy is perfect. He is a model guy. There is no more mental illness. He should be released yesterday. And then the 2016 report says his behavior has changed dramatically. Would you be in the same position if the trial court says, nope, I'm just going to make a decision here based on the 2015? We would. And truly, Your Honors, the Occam's razor here, the way to deal with hearings that take more than a year is to rule on the particular proceeding. And we've explained in our statutory argument that each probable cause hearing is tied to a particular report. It's one of the sequence of events that flows from the annual reexamination. And. Would you then, and I shouldn't have cut you off. I apologize. But is inherent in your argument, then, that the hearing must take place before the new report is issued? Or should take place? Well, it would be best for everyone if it happened that way. It obviously doesn't happen that way in many cases. But if a hearing takes place after, if a probable cause hearing takes place after the new report has been released, we still advocate that it be limited to the report that's before the court. Because the statute says, and again, in this case, it's not plainly presented whether it has to be this way because the only argument is whether the court is forced to consider the new proceeding. But we think the statute makes clear that a probable cause hearing is tied to a particular reexamination report. It's one in the sequence of events that flows from the annual reexamination. And if the consequence of that is that something has changed in one direction or the other, that can be hashed out at the evidentiary hearing if the court orders one. Or if the court finds no probable cause, it can be hashed out the next year, which is exactly what would happen in this case. The circuit court is set to rule on the 2016 proceedings a week from today. Isn't that in and of itself disturbing? It's January of 2018, and we're ruling on October 16 status, basically? I mean, these reports take into history, but it's a snapshot as of October 16. Candidly, yes, Your Honor. It's not ideal, but the reason for delays like this is the overburdening of courts and that respondents ask for a significant amount of time. Is the 2017 report, by the way, done now and in the hands of the judge? Yep. The 2017 report is complete, and I believe it was filed in October. Exactly. Right here. Right. So it's your position then to consolidate these reports and take them all to consideration at one time would be improper? Our position is that each report should trigger a discrete proceeding, and the way to deal with delays that extend one proceeding beyond a year, while there are a number of safety valves, one of the easiest ones is actually what happened in this case for the 2013 and 2014 reports at page C-305 of the record. The circuit court can just consider the two at the same time in discrete rulings. And so the circuit court has a single order saying no probable cause 2013, no probable cause 2014. And that's that. That's one way to do it. But if we accept respondents' argument that the circuit court has to reopen and, again, all this is sidestepping the fact that the procedural posture of this case is such that the hearing is already done, so we're not asking as a purely statutory matter whether the circuit court is supposed to consider new reports, but rather whether a completed hearing has to be reopened to fold in a new report that comes out. Right. That's the posture. Right. It's a denial of a motion to reopen proofs. Correct. Is that de novo review or review of discretion? That's review for an abuse of discretion. So in Crothers, which we cite in the Supreme Court, articulated that that is review for an abuse of discretion. His counter-argument is that, well, it wasn't actually a motion to reopen proofs. In fact, it was. It's not only the caption. It's the fact that the hearing was done. The circuit court was directed to consider the report, and it's true it wasn't formally introduced into evidence, but the respondent had an opportunity that he passed up to ask for an independent examiner, and so the court was limited to what was already there. As of September 16th, there was only the 2015 report available. The court heard argument from the State, heard argument from the respondent, and then was done. All that was left, like Your Honor has mentioned, like an events trial, was for the court to announce its ruling. And so what the respondent was asking the court to do was to restart, in essence, a hearing that was already done. That compounds the delays, in our opinion. Or to open it for newly discovered evidence, basically. Well, yes, Your Honor, but the key word there is open it. The hearing was done. Respondent was en route to getting a decision on this 2016 report, which he is going to get a week from today, or is scheduled to get a week from today. And I think the best way to demonstrate why our interpretation of pegging one report to one probable cause hearing is best is to imagine what would happen if we adopt respondent's argument in this case. If we grant respondent his relief and we remand for the circuit court to consider the 2016 report as part of the 2015 probable cause hearing, or rather, we wouldn't go to, he's asking for that full relief. If we take his statutory argument alone and we don't get to the merits of probable cause, we remand the 2015 probable cause hearing for the circuit court to consider it along with the 2016 report. But by the logic of this Court's ruling, it would also have to consider the 2017 report and, with two or three extensions, the 2018 report. All the while, there's also a 2016 decision coming out next week that will certainly have to be reversed because it didn't take into account the 2017 proceeding. And if that takes long enough, it will have to fold into 2018. It's quite a morass, and we can't imagine that the General Assembly intended that to be waived. But that's why I got back to the argument. Don't you think inherent in the statute was when you set up this very regimented annual report that it anticipated that the report in hearing would be conducted within the 12 months such that the new report would sort of close the door on the prior finding of probable cause or no probable cause? I don't think it's built that way, Your Honor. The reason is that the probable cause hearing is not a current status evaluation. For instance, the respondent is not entitled to be present at that hearing. You'd imagine that if the circuit court wanted to make up right this moment what's his status situation, the Act would build in the respondent being there if the circuit court wants to question him. The probable cause hearing is whether this report warrants an evidentiary hearing to determine whether the respondent is still sexually violent. If the court finds probable cause, then everything opens up and it becomes a current hearing. The State gets an independent examiner to reexamine the respondent. Respondent gets an independent examiner. The full evidentiary protections of Section 25 come into effect, and then we're getting a sort of current status examination. But the probable cause hearing, as it's set up, is really meant to be pegged to this particular report. That's clear from the structure of the Act, clear from the history of the Act. The 2012 amendments, as we explained in our brief, made clear that it's tied to a particular reexamination period, and it's clear from the practice. And so we think the circuit court did not abuse its discretion by considering only the 2015 report in the 2015 hearing. Is this a random situation? In terms of the merits, Your Honor, we don't think it is. So Dr. Proctor's conclusion was clear on its face that a respondent is still a sexually violent person. If you look at the Rendon case, Rendon was 68 years old. He scored a 1 on the static 99 actuarial, which means he was in the low-risk group, and he was on phase 5 of treatment, which is the final phase. Respondent displays none of those characteristics. And Dr. Proctor, there's no evidence within Dr. Proctor's report concluding that respondent is a sexually violent person to suggest that respondent is not. Respondent's principle argument focuses on the fact that he was a youthful offender. But as the Supreme Court explained in Stanbridge, the standard is that respondent has to provide a plausible account of a change in circumstances such that he's no longer a sexually violent person. And there's no change in circumstances related to respondent being a youthful offender. Stanbridge says he can produce evidence of a change in the person, a change in professional understanding, or a change in the law, and none of those are true for youthful offenses. Well, isn't his point that there is now apparently literature that says some of these risk tools are not the appropriate measuring device for risk when the offenses were committed when the offender was a juvenile? That's not very artfully stated, but. Yes, Your Honor. So isn't that a basis for a finding of a change? In his 2016 proceedings, it may be. Although, I would note that in Stanbridge and Kirst, out of the Second District here, both of those decisions concluded that a change in the way actuarials are used is not a change in circumstances that makes someone no longer sexually violent. As you've seen in these reports, there's a static 99 and a static 2002. In the Stanbridge case, there was a defense expert, a respondent's expert, who said, well, the static 2002 has come out, and that changes everything. Even though he's still high-scoring on this, we've changed the way we use the actuarial tests, and so that's a change. And the Supreme Court said that's not a change. There's a similar conclusion in Kirst where there was a change in the way the actuarial tests are used, and this Court said, well, that's not a change. Well, I'm sorry, that was an independent example. Those were not applied to juveniles, though. Not as applied to juveniles, but the principle extends here. A change in the way the actuarial tests are used isn't this sort of change. What we'd be looking for is someone to say, well, there's a chance that he's not substantially probable to reoffend. And Dr. Watt-Davis said he is substantially probable to reoffend. She's just taking a different road to get there. But, again, all of this assumes his principle that the 2016 report should be considered. These are arguments that he should and did make in his 2016 hearings, which he's going to get a ruling on. As the Attorney General's office is concerned, and you prosecute these cases throughout the State, correct? Yes, Your Honor. Is there a way that you could be more on task annually having these reports presented and having these probable cause hearings or hearings to determine probable cause? Candidly, Your Honor, and I'm not trying to cast aspersions, the delays are the Respondent's delays. The State files the report and is ready to go for the hearing, and the Respondents take time to review. In this case, it was he had a change of counsel, and he needed continuances. The new counsel needed two continuances to look at the record. Yeah, that's very true in this case. Should that be a factor that the Court would consider in exercising its discretion whether it did choose to use a future report? I don't think it should be. No, I don't think it should be. Because the Respondent is always going to get that next hearing, the report is going to be considered. In fact, it was considered, and we're just waiting to hear what the circuit court did with it. So it's not a question of whether or not anyone ever hears about this 2016 report. It's a question of whether or not this… When the 2016 is. Correct. Respectfully, the way to make these hearings move faster is to deny Respondents their continuances. Then we'll be here for another reason. Right. And hire many, many more, establish many, many more associate judge positions. But that's beyond the scope. Do you mean a circuit judge shouldn't be hearing this? Oh, I'm sorry, a circuit judge. My apologies, Your Honor. So for no other reasons set forth, we ask that this Court to affirm. Thank you very much. Counsel, do you wish to offer a rebuttal? Your Honor, based solely on the public defender's arguments against the 2015 report, this Court can find probable cause. This Court can find probable cause based on that alone. We know that his arguments were correct because they were corroborated by the 2016 report, which is why we're asking you to consider it as well and why we think the trial court should have considered it as well, because it backs up not just the legal arguments. The public defender did attach as exhibits to his motion the coding rules and the DSM-5. Again, he's an attorney saying this, but based on his arguments alone, which we know are true, we've established probable cause and initial remand for discharge hearing based on that alone. Now, the State suggests that each probable cause hearing is tied to a specific report, and they said in their brief that the 2012 amendments to the statute mean that the Court basically has blinders on, can only look at a certain time frame when it's ruling on probable cause. That is simply not true. And so far as that's not the case, we do have a remand situation where remand said that those 2012 amendments were not blinders, did not limit what the Court can look at. It simply focused where the Court should be looking for a change in circumstances if that's what we're looking for, to contrast with why the person was initially committed. So that issues are relitigated over and over again and to weed out frivolous claims. Mr. Bice doesn't have a frivolous claim. He's got a legitimate claim. His claim, he's just asking for his day in court to try to – he's been incarcerated since he was 13 years old, he's 35 years old. He's just asking for a day in court to try to convince the trier fact that he's no longer sexually violent. No, you think the 2015 report that the judge has to rule on, right? He's ruling on that? 2016 is currently pending. It's currently pending. Right. So then the 2017 report is pending as well. Is now out there as well, correct. Is now out there as well. Imagine a scenario where the 2016 report sounds pretty decent and the circuit court says we're going to grant you the hearing. And the 2017 report, which none of us know what's in there right now, I'm not being coy, I've not read it, I don't know what's in there. Let's say it's horrible. Now we may have a frivolous claim. Now we are going to impanel a jury, go through discovery, and gear up for trial on a case that may have absolutely no merit. So I think that the statute does mandate. Nothing mandates that the court put blinders on. We know that from Rendon. Nothing mandates that the probable cause hearing happen within a year. Nothing requires the court to limit its consideration to only some of the evidence to determine probable cause. And we have to remember the reason for the probable cause hearing is not a weed out frivolous claims, but also to give someone their day court. We're not asking the court to find that he's no longer sexually violent and to release him, although that public safety rationale does figure in. And that kind of being in the background of his proceeding, it only makes sense that the court ruling on probable cause would want to consider everything that's out there, that's available, at the time it renders its decision when it's ruling on probable cause. Does the statute allow that, though? Absolutely allows it. Nothing forbids it. And the judicial laws placed on a statute by Rendon is significant. Your Honor, Ed asked if there's a Rendon situation with regards to probable cause, and the state responded that the Rendon respondent was in Stage 5 of the treatment program and had already been conditionally released twice. Well, there's Wilcoxon from the 3rd District. He was in Phase 2, like Bice. He was 61 years old, but there were issues raised about whether the actuarials noted a decline in receiving him after 60. He actually showed in a 2012 penile plethysmograph, deviant arousal to two of the segments. Mr. Bice had none. He was scored on the static 99s. He had a score of 4, which is the same as what at least Dr. Proctor scored Bice on, although he shouldn't have scored him on that at all. He was active in treatment like Bice, and unlike Bice, he admitted that he had performed oral sex on a roommate. So Wilcoxon got a discharge hearing. If Wilcoxon gets a discharge hearing, Mr. Bice should get a discharge hearing on facts which are on every count either the same or better than Wilcoxon's. And he might get a discharge hearing when the court rules on 2016, correct? He might, but the court, when ruling on 2016, isn't considering the flaws in the 2015 report. Wouldn't that be near to your benefit? It could, although the 2016 report, I'm sorry if I may interrupt. Yes. Although the 2016 report ultimately concludes that he remains sexually violent. So it's not an opinion that he should be no longer sexually violent. Right, right. But it might give you enough to get yourself a probable cause hearing. Like you said, you're not asking at this point for him to say he's no longer sexually violent. You're asking for a probable cause hearing for him to have his day in court. Right. So 2016 may give you that probable cause hearing because there is some difference between that and the 2015 report, correct? That's correct, unless the court won't consider the 2015 report because it's not ruling on the 2016 probable cause determination, the prior term and the prior period. There's been, if the court buys, if the trial court buys the state's argument that each period is discrete and you can only consider what's happened since the most recent finding, then it shouldn't consider anything in the 2015 report or anything that happened before, which I don't think is mandated by the statute. The statute does not mandate that. The 2012 amendments do not mean that, and that's what Rendon says. So, thank you. Any other questions? Thank you both very much for your arguments. Thank you. And then recess until our next case.